IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JEANNETTE I. LOVETTE                                                                                   PLAINTIFF

v.                                    Civil No. 07-2029

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Jeannette Lovette brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed her application for DIB on January 9, 2002, alleging an onset date of June 30, 1990. (Tr. 134, 137). Plaintiff was eligible for DIB through September 30, 1995. (Tr. 134). Her application was initially denied and that denial was upheld upon reconsideration. (Tr. 100-111). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 112). Although initially scheduled for a hearing, the ALJ issued a favorable decision without a hearing. (Tr. 64-71, 122). The Appeals Council reviewed that decision, and after review, vacated the ALJ's decision and remanded the case to another ALJ for further proceedings. (Tr. 74-79). An administrative hearing was held and, following the entry of an unfavorable decision, plaintiff made an unsuccessful appeal to the Appeals Council. This matter

was the appealed to our court and a judgment remanding the case back to the Commissioner was entered on February 17, 2006. (Tr. 376-391). The court remanded the case with directives for the ALJ to consider plaintiff's wrist limitations and how those limitations would impact her ability to return to her past relevant work ("PRW") or to perform other work in the national economy. (Tr. 388, 391).

A second administrative hearing was held on July 5, 1006. (Tr. 369-370, 392-402, 490-534). Plaintiff was present and represented by counsel. At this time, plaintiff 57 years of age and possessed a GED with an eleventh grade education. (Tr. 497). She had past relevant work ("PRW") as a truck dispatcher/office clerk. (Tr. 360).

On November 14, 2006, the ALJ found that plaintiff had a combination of severe impairments, but she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 360-361, 367). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform a wide range of light work, limited by her ability to only occasionally stoop and/or crouch and never perform activities requiring rapid and/or repetitive motion, including quick flexion-extension, of either wrist. (Tr. 365, 367). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform work as a cashier or housekeeper. (Tr. 365-367). Thus, the ALJ found plaintiff not disabled and not entitled to DIB at any time through September 30, 1995, her date last insured. (Tr. 366-367).

The plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on January 31, 2007. (Tr. 346-355). Subsequently, plaintiff filed this action.

AO72A
(Rev. 8/82)

(Doc. # 3). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

Of particular concern to the undersigned is the ALJ's failure to even consider plaintiff for a closed period of disability. It appears as though the ALJ viewed the question of disability as an "all-or-nothing proposition," failing to consider the possibility of an interim, closed period of disability. However, the Secretary's regulations provide as follows:

> (a) You are entitled to disability benefits beginning with the first month covered by your application in which you meet all the other requirements for entitlement. If a waiting period is required, your benefits cannot begin earlier than the first month following that period.
>
> (b) Your disability benefits end with the earliest of these months: (1) the month before the month of your death; (2) the month before the month you become 65 years old; or (3) the second month after the month your disability ends, unless continued subject to paragraph (c) of this section.

20 C.F.R. § 404.316 (1983). The United States Court of Appeals for the Eighth Circuit reads this language to allow the court to divide the benefit claim period considered by an ALJ. *See Van Horn v. Heckler*, 717 F.2d 1196, 1200 (8th Cir. 1983). Thus, a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time. *See Harris v. Secretary of Dept. Of Health and Human Services*, 959 F.2d 723, 724 (8th Cir. 1992). It is reversible error for an ALJ to only evaluate a plaintiff for continuing disability benefits. *Id*.

The pertinent medical evidence reveals that plaintiff was diagnosed with breast cancer in June 1990. On July 12, 1990, she underwent a radical mastectomy of her left breast. (Tr. 175-89). In December 1990, plaintiff began breast reconstruction procedures. (Tr. 190-204, 251, 361, 364). Dr. Perry Franz performed the first stage of reconstruction surgery. (Tr. 190-216; 223-251). Plaintiff was discharged home on December 21, 1990, for recovery. (Tr. 191).

On February 7, 1991, Dr. Franz performed the second-stage reconstructive surgery. (Tr. 205-210, 361, 364). Plaintiff was discharged from the hospital the following day. By March 13, 1991, Dr. Franz indicated that plaintiff was ready to "go ahead with her mastoplexy." (Tr. 244). It was noted that there were no signs of recurrent cancer. (Tr. 277).

On March 27, 1991, plaintiff reported difficulty grasping things with her right hand, and her husband had noticed some slurred speech. (Tr. 243). Because she believed that the symptoms were improving, she opted to wait a little longer before consulting a neurologist. (Tr. 243). By April 24, 1991, the symptoms in plaintiff's hands had "significantly subsided." (Tr. 241, 268-270). However, plaintiff continued to complain of numbness, and with some prodding, Dr. Franz noted that this was localized to the distribution of the median nerve. He also observed excellent grip strength. (Tr. 241).

In April 1991, plaintiff was treated by Dr. Rebecca Floyd. (Tr. 268-270). Plaintiff reported "some swelling and puffiness in her face and hands;" a weight increase without a change in appetite; slurring of speech following the reconstruction surgery; and, a mild decrease in strength with tingling, and pain in her right hand. Plaintiff also indicated that she had been on thyroid replacements since childhood but had been taken off of them a few years earlier. An examination revealed a good range of motion in all extremities, with symmetrical tendon reflexes and good coordination. However, testing revealed "profound hypothyroidism." (Tr. 265-270). For this, Dr. Floyd prescribed Synthroid. (Tr. 265-270). On week later, plaintiff continued to experience non-pitting edema of the face, legs, and hands. (Tr. 265-270). Dr. Floyd increased her Synthroid dosage and indicated that she planned to continue to increase the dosage until the proper level was obtained. (Tr. 265-70).

On May 31, 1991, Dr. Franz referred plaintiff to Dr. Charles Reul for evaluation of a possible stroke, due to the aforementioned slurred speech and muscle weakness and pain. (Tr. 217, 238, 242-43). Plaintiff reported that sometime after the December 1990 surgery, she developed numbness and tinging in her hands, which was much greater in the right hand than the left. (Tr. 217). However, she denied experiencing swelling or weakness in her arms or hands. Nerve conduction velocity studies showed severe right carpal tunnel syndrome and borderline left carpal tunnel syndrome with no evidence of more generalized peripheral neuropathy. (Tr. 218-220, 361, 364). Dr. Reul diagnosed plaintiff with "carpal tunnel syndrome right much

greater than left, secondary to hypothyroidism," and remarked that the likely possibility was that her symptoms would clear after her hypothyroidism was successfully treated.[1] (Tr. 217-18).

On July 30, 1991, Dr. Floyd sent a memorandum to Dr. Franz, stating that the plaintiff "has had a resolution of the slurring of her speech and muscle weakness and her peripheral edema is markedly improved." (Tr. 261). Dr. Floyd opined that plaintiff could now continue breast reconstruction surgeries. (Tr. 261).

From August 1991 until December 31, 1991, plaintiff underwent breast revision surgeries. (Tr. 221-231, 234-237, 361, 364). On October 16, 1991, Dr. Franz noted a slight degree of redness around the reconstruction area, which was determined to be due to her increased physical activity. (Tr. 233). As such, Dr. Franz asked her to avoid strenuous activity for the next two weeks. (Tr. 233).

On December 9, 1991, Dr. Wikman related that there was no sign of cancer recurrence (Tr. 275). On February 12, 1992, Dr. Franz reported that plaintiff did not need any further procedures. (Tr. 230, 361, 364). Dr. Floyd continued conservative treatment of plaintiff's hypothyroidism between May and September 1992. (Tr. 486-489).

At a follow-up visit on January 20, 1993, Dr. Floyd noted that plaintiff's hypothyroidism was "in check." (Tr. 255).

On October 14, 1993, plaintiff complained of swelling in her left arm and hand. (Tr. 273). Dr. Wikman's nurse wrapped plaintiff's arm in an ACE bandage and told her to follow-up with Dr. Wikman. Five days later, on October 19, 1993, Dr. Floyd treated plaintiff for soreness

---

[1]This did not, however, occur. Records dated as late as April 2006 reveal that plaintiff continued to have problems with carpal tunnel syndrome. (Tr. 472-474). An EMG revealed severe compromise of the right and left median nerves at the site of the wrist affecting both motor and sensory components. (Tr. 474).

and swelling in her left arm. (Tr. 254). On October 27, 1993, Dr. John H. Wikman noted continued swelling in her left hand and arm. (Tr. 271). He prescribed Lasix and Keflex, and instructed her to wrap and elevate her arm. (Tr. 271, 273).

In December 1993, plaintiff met with Dr. Floyd, complaining of continued swelling in her left arm. (Tr. 252-253). Dr. Floyd noted that plaintiff had experienced problems with lymphedema[2] in the past, had marked swelling in her fingers, and had blister-like lesions on her left middle finger. (Tr. 252, 361). Dr Floyd prescribed fluid pills, Keflex, and directed the plaintiff to keep her arm elevated and wrapped in an Ace bandage. Plaintiff was to inform Dr. Floyd if her condition either worsened or did not improve. (Tr. 252).

In a January 1994 follow-up exam, Dr. Wikman noted that plaintiff still had a "little bit of swelling in the left arm." (Tr. 271). He gave "her the usual helpful information pertaining to that" and noted that he would check her again in six months. (Tr. 271).

We are cognizant of the fact that the basis for the Appeals Council's initial remand of this matter to the ALJ was due to the ALJ's determination that plaintiff was entitled to a period of disability beginning with her alleged onset date due to the diagnoses of breast cancer in 1990 and 2001. The remand order makes clear, however, that the Appeals Council did not find that the ALJ's opinion, which was rendered without the benefit of a hearing or development of the record, to be supported by substantial evidence due to the length of time that elapsed between the two diagnoses. We do not believe that this fact precluded the ALJ from considering plaintiff

---

[2]Lymphedema, a chronic disorder common in patients who have undergone breast cancer surgery, occurs when the lymph fails to circulate properly and accumulates in the tissues of a limb or other part of the body. *See* Don R. Revis, M. D., *Lymphedema*, *at* www.emedicine.com. Symptoms of lymphedema include pain, numbness, loss of mobility, loss of skin elasticity, hardening of the skin, increase susceptibility to infection, chronic ulceration of the skin, and severe swelling. *Id*.

for a period of disability. Although the Appeals Council and the ALJ correctly pointed out that the plaintiff did not experience a recurrence of cancer until 2001, they both failed to properly consider the likely incapacitation associated with plaintiff's numerous surgical procedures, reconstructive or otherwise, due to the breast cancer diagnosis in 1990.

The evidence makes clear that plaintiff underwent various surgical procedures over a 17 month period between July 1990 and December 1991, which is clearly in excess of the 12 month period required for a determination of disability. In her opinion, however, the ALJ dismissed plaintiff's reconstructive surgeries by stating that plaintiff had undergone "a few follow-up and cosmetic revisions which were completed in February 1992. . . . " (Tr. 364). The ALJ failed to consider the possibility of excessive work absences related to plaintiff's repeat surgeries and convalescence periods, as well as the possibility of additional work restrictions that might have been imposed due to these surgeries. She also failed to pose any hypothetical questions to the vocational expert regarding plaintiff's ability to perform work activities during this time frame. "Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Kangail v. Barnhart,* 454 F.3d 627, 629 (7th Cir. 2006) (citing *Gatliff v. Comm'r of Soc. Sec. Admin.,* 172 F.3d 690, 694 (9th Cir. 1999) (holding that two months is not a significant period); *Cole ex rel. Cole v. Barnhart,* 288 F.3d 149, 152-53 (5th Cir. 2002) (*per curiam* ); *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996)). Therefore, on remand, the ALJ is directed develop the record with regard to plaintiff's ability to perform substantial gainful activity between June 1990 and December 1991. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding that ALJ has a duty to fully develop the record regarding the claimant's impairments). Specifically, evidence should be

gathered regarding the length and frequency of plaintiff's convalescence periods. Any restrictions resulting from her surgeries should also be considered. The ALJ should then recall the vocational expert and pose hypothetical questions to the expert to determine whether or not plaintiff could perform work that existed in significant numbers in the national economy during that time frame.

Further, the ALJ should also consider plaintiff's diagnoses of lymphedema and hypothyroidism and how these diagnoses, when considered in combination with the residuals of plaintiff's breast cancer and surgical procedures, affected her ability to perform work-related activities during the relevant time period. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record); *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000)(holding that Commissioner must consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling).

We also note that the ALJ dismissed plaintiff's carpal tunnel syndrome, stating that it was related to her hypothyroidism and subsided with treatment. A review of the record indicates that this was not the case. Although one doctor opined his belief that these conditions were related, records dated as late as April 2006 revealed that plaintiff continued to have problems with carpal tunnel syndrome. (Tr. 472-474). An EMG revealed severe compromise of the right and left median nerves at the site of the wrist affecting both motor and sensory components. (Tr. 474). Therefore, on remand, the ALJ should also take this into consideration.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this <u>4th</u> day of January 2008.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)